UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID J. BRINSON,

     Applicant,

v.                                CASE NO. 8:20-cv-697-SDM-AAS

SECRETARY, Department of Corrections,

     Respondent.

_____/

## **ORDER**

Brinson applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his conviction for unlawful sexual activity with a minor, for which he was sentenced to ten years' imprisonment.  Numerous exhibits ("Respondent's Exhibit __") support the response.  (Doc. 9-2)  The respondent concedes that the application is timely but argues that some grounds are unexhausted and procedurally defaulted.  (Doc. 9)

## I. **BACKGROUND**[1]

In 2014, Brinson lived across the street from L.B., a sixteen-year-old girl.  At the time, Brinson was in his mid-fifties.  Brinson and his family were friendly with L.B. and her mother.  One day, Brinson ran into L.B. as she was coming home from school.  He said he had a "crush" on her.  Also, he told her that unless she admitted

---

[1] This summary of the facts derives from the trial transcript.  (Respondent's Exhibit 6)

to having a crush on him, he would not give her a copy of the latest *Avengers* movie. L.B. subsequently used her mother's cell phone to "text[] [Brinson] so [she] could get the *Avengers* movie." (Respondent's Exhibit 6 at 176)

Later that year, L.B. visited Brinson's house while her mother was at the beach. As the two were watching television, Brinson kissed L.B. for the first time. Several months later, Brinson's family hosted a surprise party for L.B.'s seventeenth birthday. After everybody else had left, Brinson digitally penetrated L.B.'s vagina. Over the following months, Brinson performed the same act on L.B. twenty or thirty times, and L.B. performed oral sex on Brinson "more than one time." (Respondent's Exhibit 6 at 180) In June 2015, Brinson and L.B. engaged in vaginal sex. Afterwards, Brinson told L.B. that he would "come after" her if she revealed their sexual activity to her mother. (Respondent's Exhibit 6 at 182–83)

After L.B. disclosed the relationship to her mother, Detective Paula Tolbert interviewed Brinson. At first, he denied any sexual activity with L.B. After further questioning, however, he admitted to kissing L.B., touching her breasts, and receiving oral sex from her. He also admitted that these acts took place when L.B. was seventeen years old.

## II. EXHAUSTION AND PROCEDURAL BAR

The respondent argues that grounds three and four are procedurally barred from federal review because Brinson failed to exhaust the claims. (Doc. 9 at 15, 17) "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and

correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."). An applicant must present to the federal court the same claim presented to the state court. *See Picard*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). "Mere similarity of claims is insufficient to exhaust." *Henry*, 513 U.S. at 366.

As *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), explains, an applicant must alert the state court that he is raising a federal claim and not just a state law claim:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

"It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

**Ground Three:**

Brinson asserts that the trial court erroneously failed to "consult[] with a licensed doctor" despite being "well aware of [his] psychological, mental, and [physical] issues." (Doc. 1 at 8)  Brinson failed to raise this claim in state court. On

- 3 -

direct appeal, he asserted that the prosecution violated its *Brady* obligations by failing to "produc[e] a licensed doctor to attest to [his] mental and emotion[al] state during his interview." (Respondent's Exhibit 12 at 9–10)  However, Brinson never faulted the trial court for failing to "consult[] with a licensed doctor." (Doc. 1 at 8)  As a consequence, Brinson's claim of trial court error is unexhausted.[2]  *See McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (holding that a petitioner must "present[] his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation").

Ground three is barred from federal review absent a showing of "actual cause and prejudice" or a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Brinson offers no specific facts to establish either.  Therefore, ground three is procedurally barred from federal review.

**Ground Four:**

Generously construed, Brinson's *pro se* application asserts that the prosecution violated *Giglio* by knowingly allowing Detective Tolbert to offer "perjured testimony" at trial. (Doc. 1 at 10)  Brinson alleges that Detective Tolbert falsely stated she "did not know" he was "being medicated" during his interview with law

---

[2] Even affording the application a lenient construction and assuming that Brinson raises the *Brady* claim, he cannot obtain relief.  Brinson concedes that the prosecution never retained a psychiatrist to evaluate him and therefore did not have access to a psychological evaluation.  Consequently, he fails to establish that the state withheld any exculpatory evidence.  *See Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014) ("To prevail on a *Brady* claim, the defendant must establish: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the defendant incurred prejudice.").

enforcement.  (Doc. 1 at 10)  Brinson raised this claim on direct appeal.  He argued that the prosecution "knowingly" presented "perjured testimony" from Detective Tolbert, who "lied about knowing that [he] was highly medicated" during the interview.  (Respondent's Exhibit 12 at 7)  The sole case cited in support of this claim was *Guzman v. Secretary, Department of Corrections*, which affirmed the grant of habeas relief on a *Giglio* claim.  663 F.3d 1336, 1339 (11th Cir. 2011).  Because Brinson presented his *Giglio* claim to the state court, ground four is entitled to a review on the merits.

## III. <u>STANDARD OF REVIEW</u>

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable[;] . . . an unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question . . . .");  *Woods v.*

*Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons

given by the state court and defers to those reasons if they are reasonable.").  When

the relevant state-court decision is not accompanied with reasons for the decision,

the federal court "should 'look through' the unexplained decision to the last related

state-court decision that does provide a relevant rationale [and] presume that the

unexplained decision adopted the same reasoning."  *Wilson*, 138 S. Ct. at 1192.

        In a *per curiam* decision without a written opinion, the state appellate court on

direct appeal affirmed Brinson's conviction and sentence.  (Respondent's Exhibit 13)

Similarly, in a *per curiam* decision without a written opinion, the state appellate court

affirmed the denial of Brinson's Rule 3.850 motion for post-conviction relief.

(Respondent's Exhibit 26)  The state appellate court's *per curiam* affirmances warrant

deference under Section 2254(d)(1) because "the summary nature of a state court's

decision does not lessen the deference that it is due."  *Wright v. Moore*, 278 F.3d 1245,

1254 (11th Cir. 2002).  *See also Richter*, 562 U.S. at 100 ("When a federal claim has

been presented to a state court and the state court has denied relief, it may be

presumed that the state court adjudicated the claim on the merits in the absence of

any indication or state-law procedural principles to the contrary."), and *Bishop v.

Warden*, 726 F.3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between

an "opinion" or "analysis" and a "decision" or "ruling" and explaining that

deference is accorded the state court's "decision" or "ruling" even absent an

"opinion" or "analysis").

        As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is

limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court.

Brinson bears the burden of overcoming by clear and convincing evidence a state court's fact determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001).

## IV. ISSUES ON DIRECT APPEAL

**Ground Two:**

Brinson contends that the trial court erred by "stopp[ing]" L.B's "perjured testimony" in the middle of cross-examination. (Doc. 1 at 7) He claims that, if the "questioning had continued," L.B.'s answers would have "proven" that he "did not commit the crime" and that her stepfather was the culprit. (Doc. 1 at 7) Generously construed, ground two asserts that the trial court violated Brinson's right to present a complete defense by restricting his cross-examination of L.B. The state appellate court rejected this ground in a *per curiam* decision without a written opinion.

(Respondent's Exhibit 13)  Consequently, Brinson must show that the state court's decision possessed "no reasonable basis."  *Richter*, 562 U.S. at 98.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."  *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).  The right to a meaningful opportunity to present a complete defense is "subject to reasonable restrictions."  *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  Likewise, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on [] cross-examination based on concerns about . . . harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

The trial court did not violate Brinson's right to present a complete defense. Counsel's cross-examination of L.B. was brief, and the court intervened only twice. First, the court permitted counsel to approach L.B. and hand her a copy of her deposition transcript.  (Respondent's Exhibit 6 at 184)  Second, the court held a side bar to discuss counsel's attempt to impeach L.B. with a prior inconsistent statement from her deposition (Respondent's Exhibit 6 at 187):

> THE COURT:  I guess my initial thought is[,] are you basically trying to get a way to refresh her memory, or are you trying to impeach her with some prior inconsistent statement?

> [DEFENSE COUNSEL]:  To impeach a prior inconsistent statement.  And, you know, first I would give her the opportunity to review the statement and see —
>
> THE COURT:  This is a sworn statement, so my feeling [is] it's not necessary to do that.  You simply can read into the record from the deposition the lines and pages what she said, and then [the prosecutor can] feel free on redirect to elicit any response she may have said something different.

Counsel followed this procedure and impeached L.B. with her deposition testimony about the sexual activity that took place after her birthday party (Respondent's Exhibit 6 at 188):

> Q.  Okay.  And I'm referring to page 15, lines five through seven.  I asked you, so the party was over, everyone else had left, but you had not gone home at that time or anything like that, and you responded, correct.  Okay.  But your sworn statement here today is that you had gone home and come back to get a plate, correct?
>
> A.  Correct.

The cross-examination continued without further interruption from the prosecutor or the court.  (Respondent's Exhibit 6 at 188–90)

The record refutes Brinson's assertion that the trial court "stopped" or otherwise restricted counsel's cross-examination of L.B.  (Doc. 1 at 7)  Because the court did not violate Brinson's right to present a complete defense, ground two is denied.

**Ground Four:**

Brinson claims that the prosecution violated *Giglio* by knowingly allowing Detective Tolbert to offer "perjured testimony" at trial.  (Doc. 1 at 10)  According to

Brinson, Detective Tolbert falsely testified that she "did not know" he was "being medicated" during his interview with the police. (Doc. 1 at 10) The state appellate court rejected this ground in a *per curiam* decision without a written opinion. (Respondent's Exhibit 13) As a consequence, Brinson bears the burden of showing "no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

Detective Tolbert testified that before the interview, Brinson told her over the phone that he "had had a biopsy and was just released from the hospital." (Respondent's Exhibit 6 at 202) Based on that information, Detective Tolbert "knew he had health issues." (Respondent's Exhibit 6 at 202) Defense counsel asked Detective Tolbert whether she had "any information about [Brinson] being on any kind of medications, pain medications, or anything like that." (Respondent's Exhibit 6 at 199) She answered, "Not that I can recall." (Respondent's Exhibit 6 at 199)

Brinson fails to establish a *Giglio* violation based on Detective Tolbert's testimony. "To establish a *Giglio* claim, a habeas petitioner must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, *i.e.*, that there is any reasonable likelihood that the false testimony could . . . have affected the judgment." *Guzman*, 663 F.3d at 1348. "[T]he suggestion that a statement may have been false is simply insufficient [to establish a *Giglio* violation]; the defendant must conclusively show that the statement was actually false." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1313 (11th Cir. 2005). "Perjured testimony must be given with the willful intent to provide false testimony and not as a result of a mistake,

confusion, or faulty memory." *United States v. Horner*, 853 F.3d 1201, 1206 (11th Cir. 2017).

Brinson presents no evidence that Detective Tolbert's testimony was false. The record does not "conclusively show" that at the time of trial Detective Tolbert remembered that Brinson was on medication during the interview. *Maharaj*, 432 F.3d at 1313. Also, Brinson fails to establish that the prosecution knew Detective Tolbert offered false testimony. *See Phillips v. United States*, 849 F.3d 988, 993 (11th Cir. 2017) ("[T]o prevail on [a *Giglio*] claim, a defendant must establish that the prosecutor knowingly used perjured testimony."). Lastly, the alleged false statement was not material because the prosecution presented substantial independent evidence of guilt, including L.B.'s testimony and Brinson's detailed confession. *See United States v. Dickerson*, 248 F.3d 1036, 1041 (11th Cir. 2001) ("The materiality element is satisfied if the false testimony could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.").

Because the *Giglio* claim lacks merit, ground four is denied.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Brinson claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of

counsel claim:

> The law regarding ineffective assistance of counsel claims
> is well settled and well documented.  In *Strickland v.
> Washington*, 466 U.S. 668 (1984), the Supreme Court set
> forth a two-part test for analyzing ineffective assistance of
> counsel claims.  According to *Strickland*,
>
>> First, the defendant must show that counsel's
>> performance was deficient.  This requires
>> showing that counsel made errors so serious
>> that counsel was not functioning as the
>> "counsel" guaranteed the defendant by the
>> Sixth Amendment.  Second, the defendant
>> must show that the deficient performance
>> prejudiced the defense.  This requires
>> showing that counsel's errors were so serious
>> as to deprive the defendant of a fair trial, a
>> trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance claim . . . to

address both components of the inquiry if the defendant makes an insufficient

showing on one." *Strickland*, 466 U.S. at 697.  "[C]ounsel is strongly presumed to

have rendered adequate assistance and made all significant decisions in the exercise

of reasonable professional judgment."  466 U.S. at 690.  "[A] court deciding an

actual ineffectiveness claim must judge the reasonableness of counsel's challenged

conduct on the facts of the particular case, viewed as of the time of counsel's

conduct."  466 U.S. at 690.  *Strickland* requires that "in light of all the circumstances,

the identified acts or omissions were outside the wide range of professionally

competent assistance."  466 U.S. at 690.

Brinson must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To meet this burden, Brinson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Brinson cannot meet his burden by showing that the avenue chosen by counsel proved unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91.

Sustaining a claim of ineffective assistance of counsel under Section 2254(d) is very difficult because "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. *See Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

In determining "reasonableness," Section 2254(d) authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry" and not independently assessing whether counsel's actions were reasonable. *Putman v. Head*, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001).  The presumption of correctness and the highly deferential standard of review require that the analysis of each ground begin with the state court's analysis.

**<u>Ground One:</u>**

Brinson asserts that trial counsel deficiently performed by failing to move to suppress his confession.  (Doc. 1 at 5)  He alleges (1) that he was diagnosed with schizophrenia in the early 1980s, (2) that he was taking Dilaudid, "a form of morphine," when he spoke with Detective Tolbert, and (3) that he experienced "dysphoria, hallucinations, anxiety, depression, and restlessness" during the interview.  (Doc. 1 at 5)  Generously construed, the application alleges that these circumstances rendered Brinson's confession involuntary.

The state post-conviction court rejected this claim on the ground that a motion to suppress "likely would not have been granted."  (Respondent's Exhibit 21 at 86) The court cited Detective Tolbert's testimony that Brinson "did not appear to be under the influence of medication."  (Respondent's Exhibit 21 at 86)  The court also noted that Brinson (1) "was read his *Miranda* rights and indicated that he understood his rights," and (2) "answered the Detective's questions coherently and without difficulty."  (Respondent's Exhibit 21 at 86)  Consequently, the court concluded that

counsel "was not deficient for failing to file a motion to suppress." (Respondent's Exhibit 21 at 86)

The post-conviction court reasonably rejected Brinson's claim. "The determination of whether a confession is voluntary depends on whether, under all of the surrounding circumstances, the statement was the product of the accused's free and rational choice." *United States v. Jones*, 32 F.3d 1512, 1516 (11th Cir. 1994). "A confession that was not the product of free will and rational[ ] intellect or that was made when the individual's will was overborne by physical, psychological, or drug-induced means, is inadmissible." *Parker v. Allen*, 565 F.3d 1258, 1280 (11th Cir. 2009). A suspect's intoxication or mental illness does not necessarily render his confession involuntary. *See Colorado v. Connelly*, 479 U.S. 157, 164 (1986) (stating that "a defendant's mental condition, by itself and apart from its relation to official coercion," is insufficient to warrant suppression of a confession). Instead, the suspect's condition must "undermine[] his ability to comprehend in a general way what he is doing and to communicate with coherence and context." *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 687 F. App'x 901, 906 (11th Cir. 2017).[3]

Brinson fails to establish that his confession was involuntary. Detective Tolbert testified that Brinson did not appear to be "under the influence of anything" during the interview. (Respondent's Exhibit 6 at 203) She also stated that he did not slur his words and "was alert" when he spoke to her. (Respondent's Exhibit 6 at

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

203)  The transcript of the interview shows that Brinson communicated clearly, answered questions coherently, and manifested no indication of not understanding what was happening.  (Respondent's Exhibit 6 at 209–31)  Brinson testified at trial that the morphine caused him to "move slow" and "heightened" his "nervous[ness]," but he did not claim that it prevented him from understanding Detective Tolbert's questions.  (Respondent's Exhibit 6 at 277)  The circumstances of the interview establish that Brinson's confession "was the product of an essentially free and unconstrained choice."  *Parker*, 565 F.3d at 1280.

Because the confession was voluntary, counsel did not perform deficiently by failing to file a motion to suppress.  *See Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.").  Ground one is denied.[4]

## VI. <u>CONCLUSION</u>

Brinson's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Brinson and **CLOSE** this case.

## CERTIFICATE OF APPEALABILITY
## <u>AND LEAVE TO APPEAL *IN FORMA PAUPERIS*</u>

Because Brinson fails to demonstrate either a substantial showing of the denial of a constitutional right or that reasonable jurists would debate both the merits of the grounds and the procedural issues, a certificate of appealability and leave to appeal *in*

---

[4] To the extent that Brinson attempts to assert new claims in his reply, he cannot obtain federal review.  *See Herring v. Sec'y, Dep't Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, [a]rguments raised for the first time in a reply brief are not properly before a reviewing court.").

*forma pauperis* are **DENIED**.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).  Brinson must obtain permission from the court of appeals to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on February 8, 2024.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE